1  MARIO N. ALIOTO, ESQ. (56433)
   LAUREN C. RUSSELL, ESQ. (241151)
2  TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP
   2280 Union Street
3  San Francisco, CA 94123
   Telephone: (415) 563-7200
4  Facsimile: (415) 346-0679
5  E-mail: malioto@tatp.com
   laurenrussell@tatp.com
6

7  JOSEPH M. PATANE, ESQ. (72202)
   LAW OFFICE OF JOSEPH M. PATANE
8  2280 Union Street
   San Francisco, CA 94123
9  Telephone: (415) 563-7200
   Facsimile: (415) 346-0679
10 E-mail: jpatane@tatp.com

11 Attorneys for Plaintiffs
12 [Additional Attorneys Appear On Signature Page]

13              **UNITED STATES DISTRICT COURT**

14             **NORTHERN DISTRICT OF CALIFORNIA**

15 BRIGID TERRY; ANTHONY GIANASCA; BRIGHID )  Case No.
   FLAHERTY; and, BRIDGET TEN EYCK, on behalf of )  **CV 08  1559**
16 themselves and all others similarly situated,       )
17                                                    )  **CLASS ACTION COMPLAINT**
                    Plaintiffs,                       )
18 vs.                                                )
                                                      )
19 LG ELECTRONICS, INC.; SAMSUNG                      )  **JURY TRIAL DEMANDED**
   ELECTRONICS CO., LTD.; SAMSUNG SDI CO.,            )
20 LTD.; SAMSUNG ELECTRONICS AMERICA, INC.;          )
   SAMSUNG SDI AMERICA, INC.; SAMTEL                  )
21 COLOR, LTD.; TOSHIBA CORPORATION;                  )
   TOSHIBA AMERICA ELECTRONIC                         )
22 COMPONENTS, INC.; TOSHIBA AMERICA                  )
   INFORMATION SYSTEMS, INC.; MATSUSHITA              )
23 TOSHIBA PICTURE DISPLAY CO., LTD.; MT              )
   PICTURE DISPLAY CORPORATION OF AMERICA )
24 (NEW YORK); MT PICTURE DISPLAY                     )
   CORPORATION OF AMERICA (OHIO);                     )
25 MATSUSHITA ELECTRIC INDUSTRIAL CO.,                )
   LTD.; PANASONIC CORPORATION OF NORTH               )
26 AMERICA; BEIJING-MATSUSHITA COLOR CRT              )
   COMPANY, LTD.; ORION ELECTRIC CO., LTD.;           )
27
28

1   ORION AMERICA, INC.; HITACHI LTD.; HITACHI )
    AMERICA LTD.; HITACHI ASIA, LTD.;                    )
2   CHUNGHWA PICTURE TUBES LTD.;                         )
3   CHUNGHWA PICTURE TUBES (MALAYSIA)                    )
    SDN. BHD.; LP DISPLAYS INTERNATIONAL,                )
4   LTD.; KONINKLIJKE PHILIPS ELECTRONICS                )
    N.V.; PHILIPS ELECTRONICS NORTH AMERICA;             )
5   IRICO GROUP CORP.; IRICO DISPLAY DEVICES             )
    CO., LTD.; THAI CRT COMPANY, LTD.; and               )
6   TATUNG COMPANY OF AMERICA, INC.,                     )
                                                         )
7              Defendants                                )

8

9                      **CLASS ACTION COMPLAINT**

10         Plaintiffs Brigid Terry, Anthony Gianasca, Brighid Flaherty, and Bridget Ten Eyck

11   ("Plaintiffs") on behalf of themselves and all others similarly situated in the United States, bring

12   this action for damages and injunctive relief under state and federal antitrust, unfair competition,

13   and consumer protection laws against the Defendants named herein, demanding trial by jury,

14   and complaining and alleging as follows:

15                         **NATURE OF THE CASE**

16         1.     This lawsuit is brought as a class action on behalf of individuals and entities that

17   indirectly purchased products containing cathode ray tubes ("CRT Products") (as further defined

18   below), in the United States from Defendants, their predecessors, or their controlled subsidiaries

19   and affiliates during the period beginning at least January 1, 1995 through the present (the

20   "Class Period"). Plaintiffs allege that during the Class Period the Defendants conspired to fix,

21   raise, maintain or stabilize prices of CRT Products sold in the United States. Because of

22   Defendants' unlawful conduct, Plaintiffs and other Class Members paid artificially inflated

23   prices for CRT Products and have suffered antitrust injury to their business or property.

24                        **JURISDICTION AND VENUE**

25         2.     This action is instituted under Section 16 of the Clayton Act, 15 U.S.C. §26, to

26   obtain injunctive relief for violations of Section 1 of the Sherman Act, 15 U.S.C. §1, to recover

27   damages under state antitrust and consumer protection laws, and to recover costs of suit,

28

                              **2**
                    **CLASS ACTION COMPLAINT**

1 including reasonable attorneys' fees, for the injuries that Plaintiffs and all others similarly

2 situated sustained as a result of the Defendants' violations of those laws.

3     3.     The Court has subject matter jurisdiction over the federal claim under 28 U.S.C.

4 §§ 1331 and 1337. The Court has subject matter jurisdiction over the state law claims under 28

5 U.S.C. § 1367 because those claims are so related to the federal claim that they form part of the

6 same case or controversy.

7     4.     This court also has subject matter jurisdiction over this class action pursuant to

8 the Class Action Fairness Act of 2005, which amended 28 U.S.C. § 1332 to add a new

9 subsection (d) conferring federal jurisdiction over class actions where, as here, "any member of

10 a class of Plaintiffs is a citizen of a state different from any Defendant and the aggregated

11 amount in controversy exceeds $5,000,000, exclusive of interest and costs." This Court also has

12 jurisdiction under 28 U.S.C. § 1332(d) because "one or more members of the class is a citizen of

13 a state within the United States and one or more of the Defendants is a citizen or subject of a

14 foreign state."

15     5.     Venue is laid in this District pursuant to 28 U.S.C. § 1391. Venue is proper in

16 this judicial district because during the Class Period one or more of the Defendants resided,

17 transacted business, was found, or had agents in, this district, and because a substantial part of

18 the events giving rise to Plaintiffs' claims occurred in this district, and a substantial portion of

19 the affected portion of the interstate trade and commerce described below has been carried out in

20 this district.

21                        **DEFINITIONS**

22     6.     As used herein, the term "CRT Products" means cathode ray tubes and products

23 containing cathode ray tubes, including television sets and computer monitors.

24     7.     The "Class Period" or "relevant period" means the period beginning at least

25 January 1, 1995 through the present.

26     8.     "Person" means any individual, partnership, corporation, association, or other

27 business or legal entity.

28

1    9.    The "Indirect Purchaser States" are Arizona, California, District of Columbia,

2  Iowa, Kansas, Maine, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Mexico,

3  North Carolina, North Dakota, South Dakota, Tennessee, Vermont, West Virginia, and

4  Wisconsin.

5    10.    The "Consumer Fraud States" are Arkansas, California, District of Columbia,

6  Florida, Hawaii, Kansas, Maine, Massachusetts, Nebraska, New York, New Hampshire, New

7  Mexico, North Carolina, Rhode Island, and Vermont.

8                                      **PLAINTIFF**

9    11.    Plaintiff Brigid Terry ("Terry") is a Wisconsin resident. During the relevant

10  period, Terry indirectly purchased CRT Products from one or more of the Defendants or their

11  co-conspirators and has been injured by reason of the antitrust violations alleged in this

12  Complaint.

13    12.    Plaintiff Anthony Gianasca ("Gianasca") is a Massachusetts resident. During the

14  relevant period, Gianasca indirectly purchased CRT Products from one or more of the

15  Defendants or their co-conspirators and has been injured by reason of the antitrust violations

16  alleged in this Complaint.

17    13.    Plaintiff Brighid Flaherty ("Flaherty") is an Arizona resident. During the relevant

18  period, Flaherty indirectly purchased CRT Products from one or more of the Defendants or their

19  co-conspirators and has been injured by reason of the antitrust violations alleged in this

20  Complaint.

21    14.    Plaintiff Bridget Ten Eyck ("Ten Eyck") is a Mississippi resident. During the

22  relevant period, Ten Eyck indirectly purchased CRT Products from one or more of the

23  Defendants or their co-conspirators and has been injured by reason of the antitrust violations

24  alleged in this Complaint.

25                                      **DEFENDANTS**

26    15.    Defendant LG Electronics, Inc. ("LG Electronics") is a corporation organized

27  under the laws of Korea with its principal place of business located at LG Twin Towers, 20

28  Yeouido-dong, Yeoungdeungpo-gu, Seoul 150-721, South Korea. LG Electronics is a $48.5

1   billion global force in consumer electronics, home appliances and mobile communications,

2   which established its first overseas branch office in New York in 1968. The company's name

3   was changed from GoldStar Communications to LG Electronics in 1995, the year in which it

4   also acquired Zenith in the United States. During the Class Period, LG Electronics

5   manufactured, sold and distributed CRT Products to customers throughout the United States.

6       16.    Defendant Samsung Electronics Co., Ltd. is a company organized under the laws

7   of Korea with its principal place of business located at Samsung Main Building, 250, 2-ga,

8   Taepyong-ro, Jung-gu, Seoul 100-742, South Korea. During the Class Period, Samsung

9   Electronics Co., Ltd. manufactured, sold and distributed CRT Products to customers throughout

10   the United States.

11       17.    Defendant Samsung SDI Co., Ltd. f/k/a Samsung Display Device Co., Ltd. is a

12   company organized under the laws of Korea with its principal place of business located at 15th –

13   18th Floor, Samsung Life Insurance Building, 150, 2-ga, Taepyong-ro, Jung-gu, Seoul, 100-716,

14   South Korea. Samsung SDI Co., Ltd. is a public company. Samsung Electronics Co., Ltd. is its

15   majority shareholder holding almost 20 percent of the stock. Founded in 1970, Samsung SDI

16   Co., Ltd. claims to be the world's leading company in the display and energy businesses, with

17   28,000 employees and facilities in 18 countries. Samsung SDI Co., Ltd. has offices in Chicago

18   and San Diego. During the Class Period, Samsung SDI Co. Ltd. manufactured, sold and

19   distributed CRT Products to customers throughout the United States.

20       18.    Defendant Samsung Electronics America, Inc. is a New York corporation with its

21   principal place of business located at 105 Challenger Road, 6th Floor, Ridgefield Park, New

22   Jersey 07660. Samsung Electronics America, Inc. is a wholly-owned and controlled subsidiary

23   of defendant Samsung Electronics Co., Ltd. During the Class Period, Samsung Electronics

24   America, Inc. manufactured, sold and distributed CRT Products to customers throughout the

25   United States.

26       19.    Defendant Samsung SDI America, Inc. is a California corporation with its

27   principal place of business located at 3333 Michelson Drive, Suite 700, Irvine, California.

28   Samsung SDI America, Inc. is a wholly owned and controlled subsidiary of Samsung SDI Co.,

1  Ltd., which is in turn a wholly owned and controlled subsidiary of Samsung Electronics Co.,

2  Ltd. During the Class Period, Samsung SDI America, Inc. manufactured, sold and distributed

3  CRT Products to customers throughout the United States.

4      20.    Defendants Samsung Electronics Co., Ltd., Samsung SDI Co., Ltd., Samsung

5  Electronics America, Inc., and Samsung SDI America, Inc. are referred to collectively herein as

6  "Samsung."

7      21.    Defendant Samtel Color, Ltd. ("Samtel") is an Indian company with its principal

8  place of business located at 52, Community Centre, New Friends Colony, New Delhi-110065.

9  Samtel's market share for CRT products sold in India is approximately 40%. Samtel is India's

10  largest exporter of CRT products. Samtel has gained safety approvals from the United States,

11  Canada, Germany and Great Britain for its CRT products. During the Class Period, Samtel

12  manufactured, sold and distributed CRT Products to customers throughout the United States.

13      22.    Defendant Toshiba Corporation ("Toshiba") is a business entity organized under

14  the laws of Japan, with its principal place of business at 1-1, Shibaura 1-chome, Minato-ku,

15  Tokyo 105-8001, Japan. In 2001, Toshiba held a 5-10 percent worldwide market share for CRTs

16  used in televisions and computer monitors. In 2002, Toshiba entered into a joint venture with

17  defendant Matsushita Electric called Matsushita Toshiba Picture Display Co., Ltd. in which the

18  entities consolidated their CRT businesses. In 2004, Toshiba entered into a contract with

19  defendant Orion whereby Orion became the supplier and maker of Toshiba-branded CRT

20  televisions. During the Class Period, Toshiba manufactured, sold and distributed CRT Products

21  to customers throughout the United States.

22      23.    Toshiba America Electronics Components, Inc. is a California corporation with

23  its principal place of business located at 9775 Toledo Way, Irvine, California 92618, and 19000

24  MacArthur Boulevard, Suite 400, Irvine, California 92612. Toshiba America Electronics

25  Components, Inc. is a wholly owned and controlled subsidiary of Toshiba America, Inc., which

26  is a holding company for Defendant Toshiba Corporation, and the sales and marketing

27  representative for Defendant Matsushita Toshiba Picture Display Co., Ltd. During the Class

28

1   Period, Toshiba Electronics Components, Inc. manufactured, sold and distributed CRT Products
2   to customers throughout the United States.

3       24.     Defendant Toshiba America Information Systems, Inc. is a California corporation
4   with its principal place of business located at 9470 Irvine Boulevard, Irvine, California 92718.
5   Toshiba America Information Systems, Inc. is a wholly owned and controlled subsidiary of
6   Toshiba America, Inc., a holding company for Defendant Toshiba Corporation. During the Class
7   Period, Toshiba America Information Systems, Inc. manufactured, sold and distributed CRT
8   Products to customers throughout the United States.

9       25.     Defendants Toshiba Corporation, Toshiba America Electronics Components, Inc.
10  and Toshiba America Information Systems, Inc. are referred to collectively herein as "Toshiba."

11      26.     Defendant Matsushita Toshiba Picture Display Co., Ltd. ("Matsushita-Toshiba")
12  was established as a CRT joint venture between Defendants Matsushita and Toshiba.
13  Matsushita-Toshiba is a Japanese entity with its principal place of business located at 1-1,
14  Saiwai-cho, Takatsuki-shi, Osaka 569-1193, Japan. On April 3, 2007, Defendant Matsushita
15  Electric purchased the remaining stake in Matsushita-Toshiba, making it a wholly owned
16  subsidiary, and renaming it MT Picture Display Co., Ltd. During the Class Period, Matsushita-
17  Toshiba manufactured, sold and distributed CRT Products to customers throughout the United
18  States.

19      27.     Defendant MT Picture Display Corporation of America (New York)
20  ("MTPDA(NY)") is a dissolved Maryland corporation previously located at 100 Westinghouse
21  Circle, Horseheads, New York 14845. MTDPA(NY) was a wholly owned and controlled
22  subsidiary of Defendant Matsushita-Toshiba. MTDPA(NY) specialized in the manufacture of
23  CRT televisions above 30 inches wide, supplying some 950,000 units annually to the North
24  American market. Matsushita and Toshiba announced plans to discontinue operations on
25  December 29, 2005. During the Class Period prior to December 2005, MTDPA(NY)
26  manufactured, sold and distributed CRT Products to customers throughout the United States.

27      28.     Defendant MT Picture Display Corporation of America (Ohio) ("MTDPA(OH)")
28  was a Delaware corporation with its principal place of business located at 1554 McKaig

1   Avenue, Building A, Troy, Ohio 45373. MTDPA(OH) was dissolved on March 27, 2007.

2   MTDPA(OH) was a wholly owned and controlled subsidiary of Defendant Matsushita-Toshiba.

3   During the Class Period prior to February 2006, MTDPA(OH) manufactured, sold and

4   distributed CRT Products to customers throughout the United States.

5       29.    Defendant Matsushita Electric Industrial Co., Ltd. ("Matsushita Electric") is a

6   Japanese entity with its principal place of business located at 1006 Oaza Kadoma, Kadoma-shi,

7   Osaka 571-8501, Japan. In 2002, Matsushita Electric entered into a CRT joint venture with

8   Defendant Toshiba forming Defendant Matsushita-Toshiba. Matsushita Electric was the

9   majority owner with 64.5 percent. On April 3, 2007, Matsushita Electric purchased the

10  remaining 35.5 percent stake in the joint venture, making Matsushita-Toshiba a wholly owned

11  subsidiary of Matsushita Electric. Matsushita Electric is best known for its Panasonic brand,

12  which in 2005 had the highest CRT revenue in Japan. During the Class Period, Matsushita

13  Electric manufactured, sold and distributed CRT Products to customers throughout the United

14  States.

15      30.    Defendant Panasonic Corporation of North America ("Panasonic") is a Delaware

16  corporation with its principal place of business located at One Panasonic Way, Secaucus, New

17  Jersey. Panasonic is a wholly owned and controlled subsidiary of Defendant Matsushita Electric.

18  During the Class Period, Panasonic manufactured, sold and distributed CRT Products to

19  customers throughout the United States.

20      31.    Defendant Beijing-Matsushita Color CRT Company, Ltd. ("BMCC") is a

21  Chinese company with its principal place of business located at No. 9, Jiuxianqiao N. Rd.,

22  Dashanzi Chaoyang District, Beijing, China. BMCC is the second largest producer of CRTs for

23  televisions in China. During the Class Period, BMCC manufactured, sold and distributed CRT

24  Products throughout the United States.

25      32.    Defendant Orion Electric Co., Ltd. ("Orion Electric") is a Japanese company

26  with its principal places of business at 41-1 Iehisa-cho, Echizen-shi, Fukui 915-8555, Japan.

27  Orion Electric currently manufactures CRT Products for Defendant Toshiba Corporation.

28

1  During the Class Period, Orion Electric manufactured, sold and distributed CRT Products to
2  customers throughout the United States.

3      33.      Defendant Orion America, Inc. ("Orion America") is an Indiana corporation with
4  its principal place of business located at Hwy 1 North, Orion Place, Princeton, Indiana. Orion
5  America is a wholly owned and controlled subsidiary of Defendant Orion Electric. During the
6  Class Period, Orion America manufactured, sold and distributed CRT Products to customers
7  throughout the United States.

8      34.      Defendant Hitachi, Ltd. is a business entity organized under the laws of Japan,
9  with its principal place of business located at 6-1 Marunouchi Center Building 13F, Chiyoda-ku,
10  Tokyo 100-8280, Japan. Hitachi Ltd. is the parent company for the Hitachi brand of CRT
11  products. During the Class Period, Hitachi Ltd. manufactured, sold and distributed CRT
12  Products to customers throughout the United States.

13      35.      Defendant Hitachi America, Ltd. ("Hitachi America") is a wholly owned and
14  controlled subsidiary of defendant Hitachi. Hitachi America is a business entity organized under
15  the laws of New York, with its principal place of business located at 2000 Sierra Point Parkway,
16  Brisbane, California 94005. During the Class Period, Hitachi America manufactured, sold and
17  distributed CRT Products to customers throughout the United States.

18      36.      Defendant Hitachi Asia, Ltd. ("Hitachi Asia") is a Singaporean company with its
19  principal place of business located at 16 Collyer Quay, #20-00 Hitachi Tower, Singapore,
20  049318. Hitachi Asia is a wholly owned and controlled subsidiary of defendant Hitachi. During
21  the Class Period, Hitachi Asia manufactured, sold and distributed CRT Products to customers
22  throughout the United States.

23      37.      Defendants Hitachi Ltd., Hitachi America, and Hitachi Asia are collectively
24  referred to herein as "Hitachi."

25      38.      Defendant Chunghwa Picture Tubes Ltd. ("Chunghwa Picture Tubes") is a
26  business entity organized under the laws of Taiwan, with its principal place of business located
27  at 1127 Heping Road, Bade City, Taoyuan, Taiwan R.O.C. Chunghwa Picture Tubes is a

28

1  leading manufacturer of CRT Products. During the Class Period, Chunghwa Picture Tubes
2  manufactured, sold and distributed CRT Products to customers throughout the United States.

3      39.      Defendant Chunghwa Picture Tubes (Malaysia) Sdn. Bhd. ("Chungwha
4  Malaysia") is a Malaysian company with its principal place of business located at Lot 1, Subang
5  Hi-Tech Industrial Park, Batu Tiga, 4000 Shah Alam, Selangor Darul Ehsan, Malaysia.
6  Chunghwa Malaysia a wholly owned and controlled subsidiary of defendant Chungwha Picture
7  Tubes. Chungwha Malaysia is also a leading worldwide supplier of CRT Products. During the
8  Class Period, Chungwha Malaysia manufactured, sold and distributed CRT Products to
9  customers throughout the United States.

10      40.      Defendants Chungwha Picture Tubes and Chungwha Malaysia are collectively
11  referred to herein as "Chungwha."

12      41.      Defendant LP Displays International, Ltd. f/k/a LG Philips Displays ("LP
13  Displays") was created in 2001 as a 50/50 joint venture between defendants LG Electronics and
14  Royal Philips Electronics of The Netherlands. In March 2007, LP Displays became an
15  independent company organized under the laws of Hong Kong with its principal place of
16  business located at Corporate Communications, 6th Floor, ING Tower, 308 Des Voeux Road
17  Central, Sheung Wan, Hong Kong. LP Displays is a leading supplier of color picture tubes for
18  use in television sets and computer monitors with annual sales for 2006 of over $2 billion. LP
19  Displays announced in March 2007 that Royal Philips and LG Electronics would lose control
20  over the company and the shares would be owned by financial institutions and private equity
21  firms. During the Class Period, LP Displays manufactured, sold and distributed CRT Products to
22  customers throughout the United States.

23      42.      Defendant Koninklijke Philips Electronics N.V. a/k/a Royal Philips Electronics
24  N.V. ("Royal Philips") is a company organized under the laws of The Netherlands with its
25  principal place of business located at Amstelplein 2, Breitner Center, 1070 MX Amsterdam, The
26  Netherlands. Royal Philips, founded in 1891, is one of the world's largest electronics
27  companies, with 160,900 employees located in over 60 countries. Royal Philips had sole
28  ownership of its CRT business until 2000. In 2001, Royal Philips transferred its CRT business

1   to a 50/50 CRT joint venture with LG Electronics forming defendant LP Displays. In December
2   2005, as a result of increased pressure on demand and prices for CRTs, Royal Philips wrote off
3   the remaining book value of 126 million Euros of its investment and said it would not inject
4   further capital into the joint venture. During the Class Period, Royal Philips manufactured, sold
5   and distributed CRT Products to customers throughout the United States.

6       43.    Defendant Philips Electronics North America Corporation ("Philips Electronics
7   NA") is a Delaware corporation with its principal palce of business located at 1251 Avenue of
8   the Americas, New York, NY 10020-1104. Philips Electronics NA is a wholly owned and
9   controlled subsidiary of defendant Royal Philips. During the Class Period, Philips Electronics
10  NA manufactured, sold and distributed CRT Products to customers throughout the United
11  States.

12      44.    Defendant Irico Group Corporation is a Chinese entity with its principal place of
13  business located at 1 Caihong Rd., Xianyang City, Shaanxi Province 712021. Irico Group
14  Corporation is the parent company for multiple subsidiaries engaged in the manufacture,
15  distribution, and sale of CRT Products. During the Class Period, Irico Group Corporation
16  manufactured, sold and distributed CRT Products throughout the United States.

17      45.    Irico Display Devices Co., Ltd. is a Chinese entity with its principal place of
18  business located at No. 16, Fenghui South Road West, District High-tech Development Zone,
19  Xi'an, SXI 710075. Irico Display Devices Co., Ltd. is a partially-owned subsidiary of defendant
20  Irico Group Corporation. In 2006, Irico Display Devices Co., Ltd. was China's top CRT maker.
21  During the Class Period, Irico Display Devices Co., Ltd. manufactured, sold and distributed
22  CRT Products throughout the United States.

23      46.    Defendants Irico Group Corporation and Irico Display Devices Co., Ltd. are
24  collectively referred to herein as "Irico."

25      47.    Defendant Thai CRT Company, Ltd. ("Thai CRT") is a Thai company with its
26  principal place of business located at 1/F Siam Cement Road, Bangsue Dusit, Bangkok,
27  Thailand. Thai CRT is a subsidiary of Siam Cement Group. It was established in 1986 as

28

**11**
**CLASS ACTION COMPLAINT**

1  Thailand's first manufacturer of CRTs for color televisions. During the Class Period, Thai CRT

2  manufactured, sold and distributed CRT Products throughout the United States.

3      48.    Defendant Tatung Company of America, Inc. ("Tatung America") is a California

4  corporation with its principal place of business located at 2850 El Presidio Street, Long Beach,

5  California. Tatung America was founded in 1972 and is a wholly owned and controlled

6  subsidiary of Tatung Company of Taiwan. During the Class Period, Tatung America

7  manufactured, sold and distributed CRT Products throughout the United States.

8  ## DEFENDANTS AND CO-CONSPIRATORS

9      49.    Various other persons, firms and corporations, not named as Defendants herein,

10  and presently unknown to Plaintiffs, have participated as co-conspirators with Defendants and

11  have performed acts and made statements in furtherance of the conspiracy and/or in furtherance

12  of the anticompetitive, unfair or deceptive conduct.

13      50.    Whenever in this Complaint reference is made to any act, deed or transaction of

14  any corporation, the allegation means that the corporation engaged in the act, deed or transaction

15  by or through its officers, directors, agents, employees or representatives while they were

16  actively engaged in the management, direction, control or transaction of the corporation's

17  business or affairs.

18      51.    Each of the Defendants named herein acted as the agent or joint venturer of or for

19  the other Defendants with respect to the acts, violations and common course of conduct alleged

20  herein. Each Defendant which is a subsidiary of a foreign parent acts as the sole United States

21  agent for CRT Products made by its parent company.

22  ## INTERSTATE TRADE AND COMMERCE

23      52.    Throughout the Class Period, there was a continuous and uninterrupted flow of

24  CRT Product sales in interstate and international commerce throughout the United States.

25      53.    Defendants' unlawful activities, as described herein, took place within the flow

26  of interstate commerce to CRT Product purchasers located in states other than the states in

27  which Defendants are located, as well as throughout the world, and had a direct, substantial and

28

1  reasonably foreseeable effect upon interstate and international commerce, including the United

2  States CRT Products market.

3  ## CLASS ACTION ALLEGATIONS

4  54.    Plaintiffs bring this action on behalf of themselves and as a class action pursuant

5  to the provisions of Rule 23 of the Federal Rules of Civil Procedure on behalf of all members of

6  the following class (the "Nationwide Class"):

7  All persons and or entities residing in the United States who or which indirectly
   purchased CRT Products in the United States for their own use and not for resale,
8  at any time during the period from January 1, 1995 through the present.
   Specifically excluded from this Class are the Defendants; the officers, directors
9  or employees of any Defendant; any entity in which any Defendant has a
   controlling interest; and, any affiliate, legal representative, heir or assign of any
10 Defendant. Also excluded are any federal, state or local government entities, any
   judicial officer presiding over this action and the members of his/her immediate
11 family and judicial staff, and any juror assigned to this action.

12

13 55.    Plaintiffs also bring this action on behalf of themselves and as a class action

14 pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure and/or respective

15 state statute(s), on behalf of all members of the following State classes or subclasses

16 (collectively "Indirect Purchaser State Classes"): Arizona, Arkansas, California, District of

17 Columbia, Florida, Hawaii, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota,

18 Mississippi, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina,

19 North Dakota, Rhode Island, South Dakota, Tennessee, Vermont, West Virginia, and

20 Wisconsin.

21 56.    This action has been brought and may properly be maintained as a class action

22 pursuant to Rule 23 of the Federal Rules of Civil Procedure for the following reasons:

23 a.    The Classes are ascertainable and there is a well-defined community of

24 interest among members of the Classes;

25 b.    Based upon the nature of trade and commerce involved and the number of

26 indirect purchasers of CRT Products, Plaintiffs believe that the number of Class members is

27 very large, and therefore joinder of all Class members is not practicable;

28

**13**
**CLASS ACTION COMPLAINT**

1              c.      Plaintiffs' claims are typical of Class members' claims because Plaintiffs

2    indirectly purchased CRT Products manufactured by Defendants or their co-conspirators, and

3    therefore Plaintiffs' claims arise from the same common course of conduct giving rise to the

4    claims of Class members and the relief sought is common to the Classes;

5              d.      The following common questions of law or fact, among others, exist as to

6    the members of the Classes:

7                      i.      Whether Defendants formed and operated a combination or

8    conspiracy to fix, raise, maintain, or stabilize the prices of CRT Products;

9                      ii.     Whether the combination or conspiracy caused CRT Products

10   prices to be higher than they would have been in the absence of Defendants' conduct;

11                     iii.    The operative time period of Defendants' combination or

12   conspiracy;

13                     iv.     Whether Defendants' conduct caused injury to the business or

14   property of Plaintiffs and the members of the Classes;

15                     v.      The appropriate measure of the amount of damages suffered by

16   the Classes;

17

18                     vi.     Whether Defendants' conduct violates Section 1 of the Sherman

     Act (15 U.S.C. § 1) as alleged in the First Claim for Relief;
19

20                     vii.    Whether Defendants' conduct violates the Indirect Purchaser

21   States' antitrust laws as alleged in the Second Claim for Relief;

22

23                     viii.   Whether Defendants' conduct violates the unfair competition and

     consumer protection laws of the Consumer Protection States as alleged in the Third Claim for
24
     Relief;
25

26                     ix.     The appropriate nature of class-wide equitable relief.

27

28

**14**
**CLASS ACTION COMPLAINT**

1        e.     These and other questions of law and fact common to the members of the

2    Classes predominate over any questions affecting only individual members, including legal and

3    factual issues relating to liability and damages;

4        f.     After determination of the predominant common issues identified above,

5    if necessary or appropriate, the Classes can be divided into logical and manageable subclasses;

6        g.     Plaintiffs will fairly and adequately protect the interests of the Classes in

7    that Plaintiffs have no interests that are antagonistic to other members of the Classes and have

8    retained counsel competent and experienced in the prosecution of class actions and antitrust

9    litigation to represent them and the Classes;

10        h.     A class action is superior to other available methods for the fair and

11    efficient adjudication of this litigation since individual joinder of all damaged Class members is

12    impractical. The damages suffered by the individual Class members are relatively small, given

13    the expense and burden of individual prosecution of the claims asserted in this litigation. Thus,

14    absent the availability of class action procedures it would not be feasible for Class members to

15    redress the wrongs done to them. Even if the Class members could afford individual litigation,

16    the court system could not. Further, individual litigation presents the potential for inconsistent or

17    contradictory judgments and would greatly magnify the delay and expense to all parties and the

18    court system. Therefore, the class action device presents far fewer case management difficulties

19    and will provide the benefits of unitary adjudication, economy of scale and comprehensive

20    supervision in a single court;

21        i.     Defendants have acted, and/or refused to act, on grounds generally

22    applicable to the Classes, thereby making appropriate final injunctive relief with respect to the

23    Classes as a whole; and

24        j.     In the absence of a class action, Defendants would be unjustly enriched

25    because they would be able to retain the benefits and fruits of its wrongful conduct.

26                        **CRT PRODUCT MARKET**

27       57.     CRT stands for "cathode ray tube." A CRT is a vacuum tube that is coated on its

28    inside face with light sensitive phosphors. An electron gun at the back of the vacuum tube emits

1  electron beams. When the electron beams strike the phosphors, the phosphors produce either

2  red, green, or blue light. A system of magnetic fields inside the CRT, as well as varying

3  voltages, directs the beams to produce the desired colors. This process is rapidly repeated

4  several times per second to produce the desired images.

5  58.  CRT technology was first developed more than a century ago. The first

6  commercially practical CRT television was made in 1931. However, it was not until the RCA

7  Corporation introduced the product at the 1939 World's Fair that it became widely available to

8  consumers. Since then, CRTs have become the heart of most display products, including

9  televisions, computer monitors, oscilloscopes, air traffic control monitors, and ATMs. Even

10  large public displays, including many scoreboards at sports arenas, are comprised of thousands

11  of single color CRTs.

12  59.  Until the last few years, CRTs were the dominant technology used in displays,

13  including television and computer monitors. During the Class Period, this translated into the sale

14  of millions of CRT Products, generating billions of dollars in annual profits.

15  60.  Conventional CRT televisions are being rapidly replaced by liquid crystal and

16  plasma displays, resulting in this alleged price fixing scheme to slow down the declining CRT

17  Product prices. Between 2000 and 2006, revenues from the sale of CRT televisions in the United

18  States declined by 50.7 percent and are predicted to decline by an additional 84.5 percent

19  between 2006 and 2010.

20  61.  Although demand has been sharply declining as a result of the popularity of flat-

21  panel LCDs and plasma televisions, CRT televisions were still being sold during the Class

22  Period, making collusion and the international price fixing conspiracy worthwhile. Due to the

23  high costs of LCD panels and plasma displays during the Class Period, a niche market for CRTs

24  existed as a cheaper alternative to these new technologies.

25  **STRUCTURAL CHARACTERISTICS OF THE CRT PRODUCT MARKET**

26  62.  The structural characteristics of the CRT Product market are conducive to the

27  type of collusive activity alleged in this Complaint.

28

**16**
**CLASS ACTION COMPLAINT**

63. CRT Products are commodity-like products which are manufactured in standardized sizes. One defendant's CRT Product for a particular application, such as a particular size television set or computer monitor, is substitutable for another's. Defendants sell and Plaintiff (and Class members) purchases CRT Products primarily on the basis of price.

64. It is easier to form and sustain a cartel when the product in question is commodity-like because it is easier to agree on prices to charge and to monitor those prices once an agreement is formed.

65. Demand for CRT Products is declining. Static or declining demand is another factor which makes the formation of a collusive arrangement more likely because it provides a greater incentive to firms to avoid price competition.

66. Defendants are horizontal competitors, meaning that they sell at the same wholesale or retail level of the distribution chain. This makes it easier to monitor adherence to the cartel.

67. There are substantial barriers to entry in the CRT Products industry. It would require substantial time, resources and industry knowledge to even potentially overcome the barriers to entry. It is also extremely unlikely that a new producer would enter the market in light of the declining demand for CRT products.

68. Newer industries are typically characterized by rapid growth, innovation and high profits. The CRT Product market is a mature one, and like many mature industries, is characterized by slim profit margins, creating a motivation to collude.

69. During the Class Period, the CRT industry has been dominated by relatively few companies. In 2004, Defendants Samsung SDI, LP Displays, MT Picture Display and Chunghwa Picture Tubes together held a collective 78% share of the global CRT market. The high concentration of market share facilitates coordination since there are fewer cartel members among which to coordinate pricing or allocate markets, and it is easier to monitor the pricing and production of other cartel members.

70. The CRT industry also had significant consolidation during the Class Period, including but not limited to: (a) the creation of LG Philips Displays in 2001 as a joint venture

1    between Royal Philips and LG Electronic's CRT business; (b) the 2002 merger of Toshiba and

2    Matsushita into Matsushita-Toshiba; and (c) Orion's agreement to manufacture CRT Products

3    for Toshiba, which effectively took Toshiba's capacity out of the market.

4        71.    Involvement in long standing joint ventures, both in the CRT market and closely

5    related markets, also gave these "competitors" continuous opportunities to discuss pricing,

6    capacity utilization, and other important prospective market information. The mutually

7    beneficial nature of the business relations between certain Defendants not only provided the

8    opportunity to conspire; it also created a financial incentive to do so.

9        72.    Examples of the high degree of cooperation among Defendants in both the CRT

10   market and other closely related markets include the following:

11        a.    Defendant Chungwha has a long standing joint venture with Defendant

12   Samsung Electronics Co., Ltd. for the production of liquid crystal display panels. Chungwha

13   now licenses the technology from Defendant Royal Philips, although this is a recent

14   development that helped resolve a patent infringement suit filed in 2002.

15        b.    Defendants LG Electronics and Hitachi Ltd. entered into a joint venture in

16   2000 for the manufacture, sale and distribution of optical storage products such as DVD drives.

17        c.    Defendant Samtel participates in a joint venture, Samcor Glass Limited,

18   with Defendant Samsung Electronics Co., Ltd. and non-Defendant Corning Inc., USA for the

19   production and supply of picture tube glass.

20        d.    Defendant Orion participates in a joint venture for the manufacture of

21   CRT Products with Defendant Toshiba, as well as non-Defendants P.T. Tabung Gambar

22   Indonesia and Japanese trading company Sumitomo Corporation.

23        e.    Defendant Samtel claims to have supplied CRTs to Defendants LG

24   Electronics, Samsung, Royal Philips, and Matsushita.

25       73.    Defendants also maintain their close relationships through common membership

26   in trade associations. Defendants Chungwha, Hitachi and Samsung are all members of the

27   Society for Information Display. Defendants Samsung and LG Electronics are two of the co-

28   founders of the Korea Display Industry Association. Similarly, Defendants Orion, LG

**18**
**CLASS ACTION COMPLAINT**

1   Electronics, LP Displays, and Samsung are members of the Electronic Display Industrial

2   Research Association. Upon information and belief, Defendants use these trade associations as

3   vehicles for discussing and agreeing upon their pricing for CRT Products. At the meetings of

4   these trade associations, Defendants exchange proprietary and competitively sensitive

5   information which they use to implement and monitor the conspiracy.

## DEFENDANTS' COLLUSIVE ACTIVITIES

7       74.     Plaintiffs are informed and believe, and thereon allege, that in order to control

8   and maintain profitability during declining demand for CRTs, Defendants and their co-

9   conspirators have engaged in a contract, combination, trust or conspiracy, the effect of which

10  has been to raise the prices at which they sold CRT Products to artificially inflated levels from at

11  least January 1, 1995 through the present.

12      75.     Defendants' collusion is evidenced by unusual price movements in the CRT

13  market. In the 1990s, industry analysts repeatedly predicted declines in consumer prices for

14  CRTs that did not fully materialize. Despite these predictions, and the existence of economic

15  conditions warranting a drop in prices, CRT prices nonetheless remained stable.

16      76.     During the Class Period, while demand in the United States for CRT Products

17  continued to decline, Defendants' conspiracy was effective in moderating the normal downward

18  pressures on prices for CRT Products caused by the entry and popularity of the new generation

19  LCD panels and plasma display products.

20      77.     During the Class Period, there were not only periods of unnatural and sustained

21  price stability, but there were also unexplained increases in prices of CRT Products. These price

22  increases were despite the declining demand due to the approaching obsolescence of CRT

23  Products caused by the emergence of a new, potentially superior and clearly more popular

24  substitutable technology.

25      78.     These price increases and price stability in the market for CRT Products during

26  the Class Period are inconsistent with a competitive market for a product facing rapidly

27  decreasing demand caused by a new, substitutable technology.

28

79. On November 8, 2007, antitrust authorities in Europe, Japan and South Korea raided the offices of manufacturers of CRT Products as part of an international investigation of alleged price fixing.

80. Defendant MT Picture Display Co., Ltd., the CRT unit of Defendant Matsushita Electric, has confirmed that it was raided by Japan's Fair Trade Commission.

81. *Kyodo News* reported on November 8, 2007, upon information and belief, that MT Picture Display fixed prices for CRTs with manufacturers in three Asian countries, including South Korea's Samsung SDI Co.

82. *Kyodo News* further reported that:

> Officials of these three companies are believed to have had at least 10 meetings since 2005 in major Asian cities to coordinate target prices when delivering their products to TV manufacturers in Japan and South Korea, the sources said.

83. Defendant Samsung SDI Co., Ltd. was raided by South Korea's Fair Trade Commission, which has started an investigation into Samsung's CRT business.

84. The European Commission confirmed that it had carried out surprise inspections at the European offices of CRT Product manufacturers, seeking evidence of cartel activity in the sector.

85. According to Japan's *Nikkei Business Daily*, authorities in the United States were also involved in the investigation of an alleged international cartel of CRT manufacturers.

86. The *Asian Shimbun* further reported on November 10, 2007 that "[t]he representatives held meetings in Southeast Asia where the companies operate CRT factories, the sources said. The European Commission, the European Union's executive branch, and the U.S. Justice Department have been investigating four companies' [referring to the four Asian-based manufacturers—MT Picture Display, Samsung SDI Co., Chungwha Picture Tubes, LP Displays] overseas units and are closely consulting with the Fair Trade Commission by sharing information."

87. On November 12, 2007, *Dow Jones International News* reported that Defendant Chungwha Picture Tubes Ltd. had received a subpoena on November 9, 2007 issued by a

1  California District Court "to assist in an investigation into whether cathode ray tube
2  manufacturers had set up a cartel."

3  88.    Unnamed sources close to the investigation report that the firms are suspected of
4  fixing the amount they charge TV manufacturers for CRTs in an effort to stop prices from
5  dropping.

6  89.    On November 21, 2007, Defendant Royal Philips publicly disclosed that it too is
7  subject to one or more investigations into anticompetitive conduct in the CRT industry. Royal
8  Philips spokesman Joon Knapen declined to comment on which jurisdictions have started
9  investigations. Royal Philips stated that it intended to assist the regulators.

10  90.    As outlined above, Defendants have a history of competitor contacts resulting
11  from joint ventures, numerous cross-licensing agreements, and other alliances in related
12  businesses in the electronics industry.

13  91.    Several Defendants have a history of "cooperation" and anticompetitive conduct.
14  For example, Defendant Samsung was fined $300 million by the U.S. Department of Justice in
15  October 2005 for participating in a conspiracy to fix the prices of Dynamic Random Access
16  Memory.

17  92.    Defendants Samsung and Toshiba have acknowledged being contacted by the
18  U.S. Department of Justice as part of an ongoing investigation for fixing prices of Static
19  Random Access Memory and NAND Flash Memory.

20  93.    In December 2006, authorities in Japan, Korea, the European Union and the
21  United States revealed a comprehensive investigation into anticompetitive conduct among CRT
22  manufacturers. Defendant Samsung, Toshiba and LG Philips (a joint venture between
23  Defendants LG Electronics and Royal Philips) are under criminal investigation for price fixing
24  in the closely related CRT market.

25  94.    By engaging in collusive conduct in the market for CRT Products, Defendants
26  were able to manipulate and artificially fix, raise, maintain or stabilize the prices for the CRT
27  Products that they manufactured and sold in the United States.

28

**21**
**CLASS ACTION COMPLAINT**

1    95.    During the Class Period, Plaintiffs and the class members indirectly purchased

2    CRT Products manufactured by the Defendants or their co-conspirators.

3    96.    Plaintiffs and the class members paid more for their indirect CRT Product

4    purchases than they would have paid had Defendants not fixed CRT Product prices and

5    cooperated in other aspects of the CRT Product market.

6    97.    As a direct and proximate result of Defendants' conspiracy, Plaintiffs and the

7    class members have been injured and financially damaged in their respective businesses and

8    property in presently undetermined amounts.

9    **VIOLATIONS ALLEGED**

10    **First Claim for Relief**

11    **(Violation of Section 1 of the Sherman Act)**

12    98.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and

13    every allegation set forth in the preceding paragraphs of this Complaint.

14    99.    Beginning at a time unknown to Plaintiffs, but at least as early as January 1,

15    1995, through at the present, the exact dates being unknown to Plaintiffs and exclusively within

16    the knowledge of Defendants, Defendants and their co-conspirators, entered into a continuing

17    agreement, understanding, and conspiracy to unreasonably restrain trade and commerce in the

18    United States, in violation of Section 1 of the Sherman Act, 15 U.S.C. §1.

19    100.    In particular, Defendants have combined and conspired to fix, raise, maintain or

20    stabilize the prices of CRT Products sold in the United States.

21    101.    Defendants, by their unlawful conspiracy, artificially raised, inflated and

22    maintained the market prices of CRT Products as herein alleged.

23    102.    The contract, combination or conspiracy consisted of a continuing agreement,

24    understanding and concert of action among Defendants and their co-conspirators, the substantial

25    terms of which were to fix, raise, maintain and stabilize the prices of CRT Products they sold in

26    the United States and elsewhere.

27    103.    In formulating and carrying out the alleged agreement, understanding, and

28    conspiracy, the Defendants and their co-conspirators did those things that they combined and

**22**
**CLASS ACTION COMPLAINT**

conspired to do, including, but not limited to the acts, practices, and course of conduct set forth above, and the following, among others:

    a.      Participated in meetings and conversations to discuss the prices of CRT Products;

    b.      Agreed to manipulate prices and supply of CRT Products in a manner that deprived purchasers of CRT Products of free and open competition;

    c.      Issued price announcements and price quotations in accordance with the agreements reached; and

    d.      Sold CRT Products to customers in the United States at non-competitive prices.

104.      The combination and conspiracy alleged herein has had the following effects, among others:

    a.      Price competition in the sale of CRT Products has been restrained, suppressed and/or eliminated in the United States;

    b.      Prices for CRT Products sold by Defendants and their co-conspirators have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels throughout the United States; and

    c.      Those who purchased CRT Products directly or indirectly from Defendants have been deprived the benefits of free and open competition.

105.      As a direct result of the unlawful conduct of Defendants and their co-conspirators in furtherance of their continuing contract, combination or conspiracy, Plaintiffs and the members of the Nationwide Class have been injured and will continue to be injured in their business and property by paying more for CRT Products purchased indirectly from the Defendants and their co-conspirators than they would have paid and will pay in the absence of the combination and conspiracy.

106.      These violations are continuing and will continue unless enjoined by this Court.

1     107.    Pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, Plaintiffs and the

2   Nationwide Class seek the issuance of an injunction against Defendants, preventing and

3   restraining the violations alleged herein.

4                           **Second Claim For Relief**

5                    **(Violation of State Antitrust Statutes)**

6     108.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and

7   every allegation set forth in the preceding paragraphs of this Complaint.

8     109.    Defendants' intentional and purposeful anticompetitive acts that are described

9   above, including but not limited to acts of collusion to set prices and the actual act of price

10   fixing itself, were intended to and did in fact case Plaintiffs and the members of the Indirect

11   Purchaser State Classes to pay supracompetitive prices for CRT Products purchased in the

12   Indirect Purchaser States.

13     110.    Defendants' contract, combination and conspiracy as described above is in

14   violation of the following state antitrust statutes:

15     111.    By reason of the foregoing, Defendants have entered into agreements in restraint

16   of trade in violation of Arizona Revised Stat. §§44-1401 et seq.

17     112.    By reason of the foregoing, Defendants have entered into agreements in restraint

18   of trade in violation of California Business & Professions Code §16720 et seq.

19     113.    By reason of the foregoing, Defendants have entered into agreements in restraint

20   of trade in violation of District of Columbia Code Ann. §§28-4503 et seq.

21     114.    By reason of the foregoing, Defendants have entered into agreements in restraint

22   of trade in violation of Iowa Code §§553.1 et seq.

23     115.    By reason of the foregoing, Defendants have entered into agreements in restraint

24   of trade in violation of Kansas Stat. Ann. §§50-101 et seq.

25     116.    By reason of the foregoing, Defendants have entered into agreements in restraint

26   of trade in violation of Maine Rev. Stat. Ann. 10, §§1101 et seq.

27     117.    By reason of the foregoing, Defendants have entered into agreements in restraint

28   of trade in violation of Michigan Comp. Laws Ann. §§445.773 et seq.

1    118.    By reason of the foregoing, Defendants have entered into agreements in restraint

2    of trade in violation of Minnesota Stat. §§325D.52 et seq.

3    119.    By reason of the foregoing, Defendants have entered into agreements in restraint

4    of trade in violation of Mississippi Code Ann. §75-21-1 et seq.

5    120.    By reason of the foregoing, Defendants have entered into agreements in restraint

6    of trade in violation of Nebraska Rev. Stat. §59-801 et seq.

7    121.    By reason of the foregoing, Defendants have entered into agreements in restraint

8    of trade in violation of Nevada Rev. Stat. Ann. §§598A et seq.

9    122.    By reason of the foregoing, Defendants have entered into agreements in restraint

10    of trade in violation of New Mexico Stat. Ann. §§57-1-1 et seq.

11    123.    By reason of the foregoing, Defendants have entered into agreements in restraint

12    of trade in violation of North Carolina Gen. Stat. §§75-1 et seq.

13    124.    By reason of the foregoing, Defendants have entered into agreements in restraint

14    of trade in violation of North Dakota Cent. Code §§51-08.1-01 et seq.

15    125.    By reason of the foregoing, Defendants have entered into agreements in restraint

16    of trade in violation of South Dakota Codified Laws Ann. §§37-1 et seq.

17    126.    By reason of the foregoing, Defendants have entered into agreements in restraint

18    of trade in violation of Tennessee Code Ann. §§47-25-101 et seq.

19    127.    By reason of the foregoing, Defendants have entered into agreements in restraint

20    of trade in violation of Vermont Stat. Ann. 9 §§2453 et seq.

21    128.    By reason of the foregoing, Defendants have entered into agreements in restraint

22    of trade in violation of West Virginia Code §§47-18-1 et seq.

23    129.    By reason of the foregoing, Defendants have entered into agreements in restraint

24    of trade in violation of Wisconsin Stat. §§133.01 et seq.

25    130.    Class members in each of the states listed above paid supracompetitive,

26    artificially inflated prices for CRT Products. As a direct and proximate result of Defendants'

27    unlawful conduct, Plaintiffs and members of the Indirect Purchaser State Classes have been

28

1   injured in their business and property in that they paid more for CRT Products than they

2   otherwise would have paid in the absence of Defendants' unlawful conduct.

3   131. As a result of Defendants' and their co-conspirators' violation of the above

4   Indirect Purchaser States' antitrust laws, Plaintiffs seek damages, to be trebled where permitted

5   by a particular State's antitrust law, and costs of suit, including reasonable attorneys' fees, to the

6   extent permitted by the above Indirect Purchaser States' antitrust laws.

7   ## Third Claim for Relief

8   **(Violation of State Consumer Protection and Unfair Competition Statutes)**

9   132. Plaintiffs incorporate and reallege, as though fully set forth herein, each and

10   every allegation set forth in the preceding paragraphs of this Complaint.

11   133. Defendants engaged in unfair competition or unfair, unconscionable, deceptive or

12   fraudulent acts or practices in violation of the state consumer protection and unfair competition

13   statutes listed below.

14   134. Defendants have engaged in unfair competition or unfair or deceptive acts or

15   practices in violation of Arkansas Code §4-88-101 et seq.

16   135. Defendants have engaged in unfair competition or unfair or deceptive acts or

17   practices in violation of California Business & Professions Code §17200 et seq.

18   136. Defendants have engaged in unfair competition or unfair or deceptive acts or

19   practices in violation of District of Columbia Code §28-3901 et seq.

20   137. Defendants have engaged in unfair competition or unfair or deceptive acts or

21   practices in violation of Florida Stat. §501.201 et seq.

22   138. Defendants have engaged in unfair competition or unfair or deceptive acts or

23   practices in violation of Hawaii Rev. Stat. §480 et seq.

24   139. Defendants have engaged in unfair competition or unfair or deceptive acts or

25   practices in violation of Kansas Stat. §50-623 et seq.

26   140. Defendants have engaged in unfair competition or unfair or deceptive acts or

27   practices in violation of 5 Maine Rev. Stat. §207 et seq.

28

1    141.   Defendants have engaged in unfair competition or unfair or deceptive acts or

2    practices in violation of Massachusetts G.L. c. 93A, §2 et seq.

3    142.   Defendants have engaged in unfair competition or unfair or deceptive acts or

4    practices in violation of Nebraska Rev. Stat. §59-1601 et seq.

5    143.   Defendants have engaged in unfair competition or unfair or deceptive acts or

6    practices in violation of New Hampshire Revised Statutes §358-A:1 et seq.

7    144.   Defendants have engaged in unfair competition or unfair or deceptive acts or

8    practices in violation of New Mexico Stat. §57-12-1 et seq.

9    145.   Defendants have engaged in unfair competition or unfair or deceptive acts or

10   practices in violation of New York Gen Bus. Law §349 et seq. Specifically:

11        a.     Defendants engaged in commerce in New York;

12        b.     Defendants and their co-conspirators secretly agreed to raise prices by

13   direct agreement on bids to customers located in New York and through artificial supply

14   restraints on the entire CRT Product market;

15        c.     New York consumers were targets of the conspiracy;

16        d.     The secret agreements were not known to New York consumers;

17        e.     Defendants made public statements about the price of CRT Products that

18   Defendants knew would be seen by New York consumers; such statements either omitted

19   material information that rendered these statements that they made materially misleading or

20   affirmatively misrepresented the real cause of price increases for CRT Products; and,

21   Defendants alone possessed material information that was relevant to consumers, but failed to

22   provide the information;

23        f.     Because of Defendants' unlawful trade practices in the State of New

24   York, there was a broad impact on New York consumer class members who indirectly

25   purchased CRT Products; and consumer class members have been injured because they have

26   paid more for CRT Products than they would have paid in the absence of Defendants' unlawful

27   trade acts and practices;

28

**27**
**CLASS ACTION COMPLAINT**

1    g.    Because of Defendants' unlawful trade practices in the State of New

2  York, New York consumer class members who indirectly purchased CRT Products were misled

3  to believe that they were paying a fair price for CRT Products or the price increases for CRT

4  Products were for valid business reasons; and similarly situated consumers were potentially

5  affected by Defendants' conduct;

6    h.    Defendants knew that their unlawful trade practices with respect to

7  pricing of CRT Products would have an impact on New York consumers and not just

8  Defendants' direct customers;

9    i.    Defendants knew that their unlawful trade practices with respect to

10  pricing of CRT Products would have a broad impact, causing consumer class members who

11  indirectly purchased CRT Products to be injured by paying more for CRT Products than they

12  would have paid in the absence of Defendants' unlawful trade acts and practices;

13    j.    Defendants' consumer-oriented violations adversely affected the public

14  interest in the State of New York.

15    146.    Defendants have engaged in unfair competition or unfair or deceptive acts or

16  practices in violation of North Carolina Gen. Stat. §75-1.1 et seq.

17    147.    Defendants have engaged in unfair competition or unfair or deceptive acts or

18  practices in the sale of CRT Products that were indirectly purchased primarily for personal,

19  family, or household purposes in violation of Rhode Island Gen. Laws §6-13.1-1 et seq.

20    a.    Defendants engaged in commerce in Rhode Island;

21    b.    Defendants and their co-conspirators unscrupulously and secretly agreed

22  to raise CRT Product prices by direct agreement on prices Defendants charged their customers

23  located in Rhode Island and through artificial supply restraints on the entire CRT Products

24  market;

25    c.    The secret agreements were not known to Rhode Island natural persons

26  who indirectly purchased CRT Products primarily for personal, family or household purposes;

27    d.    Defendants made public statements that Defendants knew would be seen

28  by Rhode Island natural persons who indirectly purchased CRT Products primarily for personal,

1    family or household purposes; such statements created a likelihood of confusion or

2    misunderstanding with respect to the real reasons that the prices of CRT Products were rising;

3    and, such statements either omitted material information that rendered the statements materially

4    misleading and confusing, or affirmatively deceived such consumers about the real cause of

5    price increases for CRT Products;

6          e.       Because of Defendants' unlawful and unscrupulous trade practices in

7    Rhode Island, natural persons in Rhode Island who indirectly purchased CRT Products primarily

8    for personal, family or household purposes were misled or deceived to believe that they were

9    paying a fair price for CRT Products or the price increases for CRT Products were for valid

10   business reasons;

11         f.       Natural persons who indirectly purchased CRT Products primarily for

12   personal, family or household purposes have been injured bcause they have paid more for CRT

13   Products than they would have in the absence of Defendants' unlawful and unscrupulous trade

14   acts and practices;

15         g.       Defendants knew that their unscrupulous and unlawful trade practices

16   with respect to pricing CRT Products would have an impact on Rhode Island natural persons

17   who indirectly purchased CRT Products primarily for personal, family or household purposes

18   and not just Defendants' direct customers;

19         h.       Defendants knew that their violations with respect to pricing of CRT

20   Products would have a broad impact, causing natural persons who indirectly purchased CRT

21   Products primarily for personal, family or household purposes to be injured by paying more for

22   CRT Products than they would have paid in the absence of Defendants' unlawful trade acts and

23   practices;

24         i.       Defendants' violations adversely affected public policy in Rhode Island.

25         148.     Defendants have engaged in unfair competition or unfair or deceptive acts or

26   practices in violation of Vermont Stat. Ann. Title 9, §2451 et seq.

27         149.     Class members in each of the Consumer Fraud States listed above paid

28   supracompetitive, artificially inflated prices for CRT Products. As a direct and proximate result

                                              **29**
                                   **CLASS ACTION COMPLAINT**

1    of Defendants' unlawful conduct, Plaintiffs and Class members have been injured in their
2    business and property in that they paid more for CRT Products than they otherwise would have
3    paid in the absence of Defendants' unlawful conduct.

4        150.    Plaintiffs and Class members are therefore entitled to all appropriate relief as
5    provided for by the above Consumer Fraud States' laws, including but not limited to, actual
6    damages, injunctive relief, attorneys' fees and equitable relief such as restitution and/or
7    disgorgement of all revenues, earnings, profits, compensation and benefits which may have been
8    obtained by Defendants as a result of their unlawful conduct.

9                            **Fourth Claim for Relief**

10                  **(Unjust Enrichment and Disgorgement of Profits)**

11       151.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and
12    every allegation set forth in the preceding paragraphs of this Complaint.

13       152.    Defendants have been unjustly enriched through overpayments by Plaintiffs and
14    the Class members and the resulting profits.

15       153.    Under common law principles of unjust enrichment, Defendants should not be
16    permitted to retain the benefits conferred via overpayments by Plaintiffs and the members of the
17    Classes.

18       154.    Plaintiffs seek disgorgement of all profits resulting from such overpayments and
19    establishment of a constructive trust from which Plaintiffs and the Class members may seek
20    restitution.

21                        **FRAUDULENT CONCEALMENT**

22       155.    Throughout the relevant period, Defendants affirmatively and fraudulently
23    concealed their unlawful conduct against Plaintiff and the Classes.

24       156.    Plaintiffs and the members of the Classes did not discover, and could not discover
25    through the exercise of reasonable diligence, that Defendants were violating the antitrust laws as
26    alleged herein until shortly before this litigation was commenced. Nor could Plaintiffs and the
27    Class members have discovered the violations earlier than that time because Defendants
28    conducted their conspiracy in secret, concealed the nature of their unlawful conduct and acts in

1    furtherance thereof, and fraudulently concealed their activities through various other means and

2    methods designed to avoid detection. The conspiracy was by its nature self-concealing.

3       157.    Defendants engaged in a successful, illegal price-fixing conspiracy with respect

4    to CRT Products, which they affirmatively concealed, in at least the following respects:

5         a.      By agreeing among themselves not to discuss publicly, or otherwise

6    reveal, the nature and substance of the acts and communications in furtherance of their illegal

7    scheme; and

8         b.      By giving false and pretextual reasons for their CRT Product price

9    increases during the relevant period and by describing such pricing falsely as being the result of

10    external costs rather than collusion.

11       158.    As a result of Defendants' fraudulent concealment of their conspiracy, Plaintiffs

12    and the Classes assert the tolling of any applicable statute of limitations affecting the rights of

13    action of Plaintiffs and the members of the Classes.

14                        **PRAYER FOR RELIEF**

15    WHEREFORE, Plaintiffs pray as follows:

16      A.      That the Court determine that the claims alleged herein under the Sherman Act,

17    state antitrust laws, state consumer protection and/or unfair competition laws may be maintained

18    as a class action under Rule 23 of the Federal Rules of Civil Procedure;

19      B.      That the Court adjudge and decree that the unlawful conduct, contract,

20    combination and conspiracy alleged herein constitutes:

21         a.    A violation of the Sherman Act, 15 U.S.C. §1, as alleged in the First Claim

22             for Relief;

23         b.    A violation of the Indirect Purchaser States' antitrust laws as alleged in the

24             Second Claim for Relief;

25         c.    A violation of the Consumer Fraud States' consumer protection and unfair

26             competition laws as alleged in the Third Claim for Relief; and

27         d.    Acts of unjust enrichment as set forth in the Fourth Claim for Relief herein.

28

1    C.    That Plaintiffs and the Indirect Purchaser State Classes recover damages, as

2    provided by the Indirect Purchaser States' antitrust laws and the Consumer Fraud States'

3    consumer protection and unfair competition laws, and that a joint and several judgment in favor

4    of Plaintiffs and the Classes be entered against the Defendants in an amount to be trebled in

5    accordance with such laws;

6    D.    That Defendants, their co-conspirators, successors, transferees, assigns, parents,

7    subsidiaries, affiliates, and the officers, directors, partners, agents and employees thereof, and all

8    other persons acting or claiming to act on behalf of Defendants, or in concert with them, be

9    permanently enjoined and restrained from, in any manner, directly or indirectly, continuing,

10   maintaining or renewing the combinations, conspiracy, agreement, understanding or concert of

11   action, or adopting or following any practice, plan, program or design having a similar purpose

12   or effect in restraining competition;

13   E.    That Plaintiffs and the Classes be awarded restitution, including disgorgement of

14   profits obtained by Defendants as a result of its acts of unfair competition and acts of unjust

15   enrichment;

16   F.    That the Court award Plaintiffs and the Classes they represent pre-judgment and

17   post-judgment interest as permitted by law;

18   G.    That Plaintiffs and the members of the Classes recover their costs of suit,

19   including reasonable attorneys' fees as provided by law; and

20   H.    That the Court award Plaintiffs and the Classes they represent such other and

21   further relief as may be necessary and appropriate.

22   //

23   //

24   //

25

26

27

28

**32**
**CLASS ACTION COMPLAINT**

1

## JURY DEMAND

2

Plaintiffs demand a trial by jury of all of the claims asserted in this Complaint so triable.

3

4    Dated: March 20, 2008          By:    *Mario N. Alioto*

5                                           Mario N. Alioto (56433)
                                            Lauren C. Russell (241151)
6                                           **TRUMP, ALIOTO, TRUMP & PRESCOTT,**
                                            **LLP**
7                                           2280 Union Street
                                            San Francisco, CA 94123
8                                           Telephone: (415) 563-7200
                                            Facsimile: (415) 346-0679
9                                           malioto@tatp.com ; laurenrussell@tatp.com

10
                                            Joseph M. Patane (72202)
11                                          **LAW OFFICES OF JOSEPH M. PATANE**
                                            2280 Union Street
12                                          San Francisco, CA 94123
                                            Telephone: (415) 563-7200
13                                          Facsimile: (415) 346-0679
14                                          E-mail: jpatane@tatp.com

15                                          Lawrence G. Papale (67068)
                                            **LAW OFFICES OF LAWRENCE G. PAPALE**
16                                          1308 Main Street #117
17                                          St. Helena, CA 94574
                                            Telephone: (707) 963-1704
18                                          Facsimile: (707) 963-0706
                                            E-mail: lgpapale@papalelaw.com
19
                                            Kenneth L. Valinoti (118442)
20                                          **VALINOTI & DITO LLP**
21                                          180 Montgomery Street, Suite 940
                                            San Francisco, CA 94104
22                                          Telephone: (415) 986-1338
                                            Facsimile: (415) 986-1231
23                                          E-mail: kvalinoti@valinoti-dito.com

24
                                            Sherman Kassof (66383)
25                                          **LAW OFFICES OF SHERMAN KASSOF**
                                            954 Risa Road, Suite B
26                                          Lafayette, CA 94549
                                            Telephone: (510) 652 2554
27                                          Facsimile: (510) 652 9308
28                                          E-mail: heevay@att.net

**33**
**CLASS ACTION COMPLAINT**

Seymour J. Mansfield
Jean B. Roth
Lawrence P. Schaefer, Of Counsel
**MANSFIELD, TANICK & COHEN, P.A.**
1700 U.S. Bank Plaza
220 South Sixth Street
Minneapolis, MN 55402
Telephone: (612) 339-4295
Facsimile: (612) 339-3161
E-mail: smansfield@mansfieldtanick.com

Robert Bonsignore
**ATTORNEY AT LAW**
23 Forest Street
Medford, MA 02155
E-mail: rbonsignore@aol.com

**Attorneys for Plaintiffs Gianasca, Flaherty, Ten Eyck, Terry And All Others Similarly Situated**